**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kent Dyer, et al.,             ) | No. CIV 04-0408-PHX-SMM |
|                                )  | |
| Plaintiffs,      ) | **MEMORANDUM OF DECISION AND ORDER** |
|                                ) | |
| vs.                            ) | |
|                                ) | |
| Jason Napier, et al.,          ) | |
|                                ) | |
| Defendants.     ) | |
| _____) | |

Plaintiff Kent Dyer ("Dyer" and, collectively with his wife, "Plaintiffs") is a wildlife photographer who took, and later copyrighted, a photograph titled, "Mother Mountain Lion with Baby in Mouth." Defendant Jason Napier ("Napier" and, collectively with his wife and gallery, "Defendants") is an artist specializing in bronze sculptures who has created and sold several monument and maquette versions of a sculpture titled, "Precious Cargo," which shows a mother mountain lion holding a baby mountain lion with her mouth.

In a complaint filed on February 26, 2004, Plaintiffs alleged that Defendants engaged in copyright infringement of the "Mother Mountain Lion with Baby in Mouth" photo, and requested statutory damages, attorneys' fees, actual damages, and profits. (Dkt. 1.) Defendants sold both monument and maquette versions of the Precious Cargo sculpture from 2001 until April 16, 2004, when they agreed to stop casting, creating, and/or selling the sculptures. (Dkt. 57, ¶14.) The Court entered a preliminary injunction in accordance with this stipulation on April 19, 2004. (Dkt. 12.)

On March 16, 2006, this Court granted Defendants' Motion for Partial Summary Judgment, holding that Plaintiffs are barred from recovering statutory damages and attorneys' fees as a matter of law. (Dkt. 84.)

Defendants now move for summary judgment on the issues of liability and the scope of actual damages. (Dkt. 56.) Also pending are two motions by Plaintiffs to strike certain parts of Defendants' evidence and expert testimony. (Dkts. 72-73.) Because the similarity between the two works at issue here include only non-protectable elements of Plaintiffs' copyrighted photograph, the Court will grant summary judgment in Defendants' favor on the issue of liability. Thus, the actual damages issue and Plaintiff's Motion to Strike evidence relevant to the damages issue alone (dkts. 72) are moot.[1]

## **FACTUAL BACKGROUND**[2]

Defendant Jason Napier is an artist who creates bronze sculptures of wildlife and other objects and has done so for more than the past ten years. (Dkt. 57, ¶5.) Napier submits that his wildlife sculptures have their own distinct and recognizable style with sleek, smooth, rounded lines and surfaces that are used to express the natural anatomy of wildlife animals. (Id.) Although it is not material to the issue of liability, Plaintiffs dispute this characterization of Napier's sculptures. (Dkt. 53, ¶1.)

Plaintiff Kent Dyer is a wildlife photographer who created and published wildlife photos

---

[1] The parties have had the opportunity to submit evidence and briefing, and the Court would not find oral argument helpful in resolving this matter. Accordingly, the Court finds the pending motion for summary judgment suitable for decision without oral argument. See LRCiv 56.2; Local Rules of Civil Procedure ("LRCiv") of the United States District Court for the District of Arizona 7.2(f); Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp., 933 F.2d 724, 728-29 (9th Cir. 1991) ("When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice" when oral arguments are not held on motions for summary judgment.).

[2] This section sets forth material facts as distilled from the parties' separate Statements of Facts and Statement of Controverted Facts, see dkts. 57, 63, 69, following the resolution of Plaintiffs' motion to strike (dkt. 73). The Court has resolved all disputed facts and drawn all inferences the evidence reasonably can support in favor of Plaintiffs, as the nonmoving party.

from 1989 to 2000. (Dkt. 57, ¶1.) In June 1995, Dyer hired Animals of Montana and its owner, Troy Hyde, to assist him in a photo shoot involving various wildlife animals, including a mother mountain lion with a baby mountain lion in her mouth. (Id., ¶2.) The day before the photo shoot, Dyer scouted the area and planned how, when, and where he would shoot the photograph of the mother mountain lion and her kitten. (Id., ¶3.) Dyer eventually found what he considered the perfect spot for his mother mountain lion photo: a large boulder flanked by another boulder and an evergreen tree with a snow-covered mountain, blue sky, and forest of green trees in the background (id. at p.2). See Dkt. 1, Ex.B. After he found the location, Dyer "composed" the photograph by (i) watching the sun move to determine the level of brightness and shadows at different times of the day; and (ii) selecting the cameras, lenses, angle, and film to use. (Dkt. 57 at p.3.) Based on the amount of light Dyer wanted in order to highlight the background and subjects, he decided to shoot the photo in the morning. (Id. at p.4.)

The morning of the shoot, Hyde and other animal trainers from Animals of Montana transported a mother mountain lion and her babies to the site chosen by Dyer and assisted in manipulating the animals to present themselves in the scene. (Id.) This was accomplished by using a technique that had proven to be successful in prior photo shoots: Hyde placed a baby mountain lion on the end of a boulder near a drop-off. When the mother mountain lion was released, she instinctively[3] walked over to the boulder and used her mouth to pick up the kitten. (Id. at 5.) This procedure was repeated more than a dozen times until Dyer captured the photograph that he later published and sold under the title, "Mother Mountain Lion with Baby in Mouth" (the "Mother Mountain Lion Photo"). (Id., ¶4.)

On June 3, 2002, Dyer obtained a federal copyright registration for the Mother Mountain Lion Photo, which listed the date of first publication as June 4, 1997. (Id.)

---

[3] According to Dyer, the mother mountain lion's protective instinct causes it to retrieve a baby mountain lion who is near a drop-off. (Id. at pp. 4-5.) Troy Hyde explained that when kittens are very young, such as the kittens used here, the mother mountain lion's natural instinct is to keep the kittens grouped together. (Id. at pp. 10-11.)

- 3 -

1 | Defendant Napier first met Dyer at an art show in Carefree, Arizona, although they
2 | disagree on whether this was in 1998 or 2001. (Id., ¶6; dkt. 63, ¶2.) Napier and Dyer agree that
3 | Napier obtained a "mini" photograph of Dyer's Mother Mountain Lion Photo at a Carefree art
4 | show in 2001, but they disagree on the facts and circumstances relating to how Napier obtained
5 | the photograph. (Dkt. 57, ¶7; Dkt. 63 , ¶3.) Also in dispute is whether Dyer authorized Napier
6 | to use the mini photograph as an art reference to create a bronze sculpture. Napier has presented
7 | evidence that he used a number of art references to create the large and small versions of
8 | Precious Cargo. Dyer disputes the credibility of this statement. (Dkt. 57, ¶7 and Ex. 7; Dkt.
9 | 63, ¶3.) None of these disputed facts are material, however, because Napier's access to the mini
10 | photograph of Dyer's Mother Mountain Lion Photo is undisputed. (Dkt. 57, ¶8.)

**STANDARD OF REVIEW**

Summary judgment is appropriate in copyright infringement cases if, after viewing the evidence and drawing every inference in the light most favorable to the nonmoving party, the court concludes that no reasonable jury could find substantial similarity of both ideas and expression between the works at issue. Litchfield v. Spielberg, 736 F.2d 1352, 1355-56 (9th Cir. 1984); See v. Durang, 711 F.2d 141, 143 (9th Cir. 1983) ("Summary judgment is proper if reasonable minds could not differ as to the presence or absence of substantial similarity of expression").

A plaintiff bears the burden of proving that the works at issue are substantially similar in a copyright infringement case. See Apple Computer, Inc. v. Microsoft Corporation, 35 F.3d 1435, 1443 (9th Cir. 1994); Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000). Therefore, summary judgment for defendant is appropriate when plaintiff fails to make a sufficient showing that the ideas and expressive elements of the works are substantially similar after defendant has properly identified in a motion for summary judgment that plaintiff has failed to do so. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986) (Moving party need only inform the court of the basis of its motion and is then "'entitled to judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof"); Barnes v. Arden

1  Mayfair, Inc., 759 F.2d 676, 680 (9th Cir. 1985) ("'[I]f there is no genuine issue of material
2  fact, and if the resisting party does not present a record sufficient to support a reasonable
3  finding in his favor, a district court has a duty to grant the motion for summary judgment.'")
4  (citation omitted).  A plaintiff avoids summary judgment in a copyright case by satisfying the
5  extrinsic test, which makes the similarity of the works a triable issue of fact.  Kouf v. Walt
6  Disney Pictures & Television, 16 F.3d 1042, 1045 (9th Cir. 1994).

7       The Court recognizes that, generally, "summary judgment is not highly favored on the
8  substantial similarity issue in copyright cases."  Berkic v. Crichton, 761 F.2d 1289, 1292 (9th
9  Cir. 1985); Litchfield,  736 F.2d at 1355 ("Substantial similarity is usually an extremely close
10 issue of fact and summary judgment has been disfavored in cases involving intellectual
11 property") (citation omitted).  Nonetheless, the question whether there is substantial similarity
12 of ideas and expression between two works may often be decided as a matter of law, Berkic,
13 761 F.2d at 1292, and there is no special standard for determining "'whether summary judgment
14 is appropriate on the issue of substantial similarity of expression.'"  Id. (quoting Durang, 711
15 F.2d at 142).  Thus, the Ninth Circuit Court of Appeals has "frequently affirmed summary
16 judgments in favor of copyright defendants on the substantial similarity issue."  Berkic, 761
17 F.2d at 1292 (citing Litchfield, 736 F.2d at 1358).

## DISCUSSION

### A.     The Expert Testimony of Ms. Kinne is Admissible

20      Both parties have submitted expert testimony in support of their positions on the liability
21 issue before the Court.  See Dkt. 57, ¶¶16-18, Ex. 10; Dkt. 63, Ex. 4.  Plaintiffs have filed a
22 Motion to Strike the testimony of Defendants' expert, Ms. Jane S. Kinne, from paragraphs 16-
23 18 of Defendants' Separate Statement of Facts on the grounds that "she is not a lawyer, she is
24 not a photographer, and she is not a sculptor."  Dkt. 73 at 3, emphasis in original.  Plaintiffs
25 contend, under Fed.R.Evid. 702 and the Supreme Court's decision in Daubert v. Merrell Dow
26 Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993), "Ms. Kinne does not have the scientific,
27 technical or other specialized knowledge that will assist the trier of fact in understanding the
28 evidence."  Id.  The Court has reviewed the complete deposition testimony and expert witness

disclosure statement of Ms. Kinne and denies Plaintiffs' request to strike her testimony. See Dkt. 79, Exs. A, B.

Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony. The rule consists of three distinct but related requirements: (1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion.   Fed.R.Evid. 702.  Because Plaintiffs only challenge Ms. Kinne's expertise to provide knowledge concerning wildlife photographs and sculptures, rather than the substantive reliability of her testimony, the Court need not analyze the Daubert factors. See Daubert, 509 U.S. at 589 (holding that trial judges are charged with the responsibility of acting as gate-keepers to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable").

Ms. Kinne's deposition and expert report demonstrate that she has sufficient expertise to provide specialized knowledge concerning the issue of copyright infringement as it relates to the wildlife photograph and sculpture at issue here.[4] Although she is not a professional photographer or sculptor, Ms. Kinne has close to sixty years of experience in the business of licensing photography rights, which is inextricably intertwined with issues of copyright law. See Dkt. 79, Ex. A at 12:20-13:10, 19:12-17, 20:6-8. Ms. Kinne has participated in numerous professional organizations relating to these issues, including the North American Nature Photography Association, she has served on the legal committee for the Picture Agency Council of America for more than fifty years, and she has presented at seminars concerning copyright protection for photographs. Id. at 35:6-36:19, 37:6-38:1, 39:16-40:14, 41:4-21, 42:6-43:10, 44:6-15, 45:14-47:2, 55:13-56:9. Throughout her professional career, Ms. Kinne has "represented every major wildlife photographer and many of the lesser known" at least once,

---

[4] Ms. Kinne was retained by Defendants to (i) evaluate and identify any copyrightable elements in the present case, (ii) comment on exhibits, including the Mother Mountain Lion Photo, and Plaintiffs' expert's report, and (iii) provide an opinion as to whether there were more similarities than differences between the Mother Mountain Lion Photograph and the Precious Cargo sculpture. See Dkt. 79, Ex. A at 9-10.

- 6 -

and has been retained as an expert witness and consultant in more than 500 cases, many of which dealt specifically with copyright issues. One particular case concerned copyright infringement of a photograph by a sculpture. Id. at 55:19-56:9, 56:10-57:10, 80:5-84:9. On the basis of this evidence, the Court specifically finds that Ms. Kinne's background and training credentials are sufficient, that expert testimony provided by her may prove helpful, and that she may reliably determine the issues on which she was retained to opine. Because the record does not support Plaintiffs' assertions that Ms. Kinne "does not have the formal education or training to opine on legal issues, the art of photography or the art of sculpting" (dkt. 73 at 6), the Court denies Plaintiffs' Motion to Strike Ms. Kinne's testimony.

**B.     Plaintiffs Have Failed to Demonstrate Substantial Similarity**

       **1.     Elements of a Copyright Infringement Claim**

In order to prevail on a copyright infringement claim in the Ninth Circuit, a plaintiff must show that (1) he owns a valid copyright and (2) defendant copied protected elements of the copyrighted work. Apple Computer, Inc., 35 F.3d at 1442. Because direct evidence of copying is not available in most cases, plaintiff may establish "copying" by showing that defendant had access to plaintiff's work and the two works are "substantially similar" in idea and in expression of the idea. Id.

In the present case, it is undisputed that Plaintiffs own a valid copyright in the Mother Mountain Lion Photo. (Dkt. 57, ¶4.) On the second prong, however, Plaintiffs' evidence fails to demonstrate direct copying of the Mother Mountain Lion Photo. See Narell v. Freeman, 872 F.2d 907, 910 (9th Cir. 1989) ("A finding that a defendant copied a plaintiff's work, without application of a substantial similarity analysis, has been made only when the defendant has engaged in virtual duplication of a plaintiff's entire work."). Therefore, Plaintiffs must use the "copying test" to show infringement. The copying test requires Plaintiffs to produce evidence demonstrating: (i) that Defendant Napier had "access" to the Mother Mountain Lion Photo and (ii) the Mother Mountain Lion Photo and the Precious Cargo sculpture are "substantially similar" in idea and expression of the idea. See Three Boys Music Corp., 212 F.3d at 481 (citing Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996)).

1    As previously stated, Defendants do not dispute the first element of the copying test, that
2 Defendant Napier had access to the Mother Mountain Lion Photo (Dkt. 57, ¶8).  Although no
3 amount of proof of access will suffice to show copying if there are no similarities, Shaw v.
4 Lindheim, 919 F.2d 1353, 1361 (9th Cir. 1990), the import of a defendant's access to the work
5 at issue is governed by an inverse-ratio rule that permits "a lesser showing of substantial
6 similarity if there is a strong showing of access."  Three Boys Music Corp., 212 F.3d at 486.
7 Therefore, bearing in mind this lesser standard, the critical issue here is whether the Mother
8 Mountain Lion Photo and the Precious Cargo sculpture are "substantially similar" in both idea
9 and expression of the idea.  Cf. Smith, 84 F.3d at 1220 ("establishing access eliminates the need
10 for a plaintiff to establish a 'striking similarity'").

   **2.     The Ninth Circuit's "Substantial Similarity" Test**

   **a.     "Substantial Similarity" Does Not Extend to Ideas**

13   "To show that two works are substantially similar, plaintiff must demonstrate that
14 the works are substantially similar in both *ideas* and *expression*."  Frybarger v. Int'l Business
15 Machines Corp., 812 F.2d 525, 529 (9th Cir. 1987) (emphasis in original).  Although plaintiff
16 must first show that the ideas are substantially similar, the ideas themselves are not protected
17 by copyright and, therefore, cannot be infringed.  See Mazer v. Stein, 347 U.S. 201, 217-18
18 (1954) (copyright law protects only an artist's expression of an idea, not the idea itself); 17
19 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship
20 extend to any idea, procedure, process, system, method of operation, concept, principle, or
21 discovery, regardless of the form in which it is described, explained, illustrated, or embodied
22 in such work.").  There are strong public policy reasons for freely permitting the use of *ideas*
23 contained in a copyrightable work so long as the *protected expression* itself is not appropriated.
24 See Landsberg v. Scrabble Crossword Game Players, Inc., 736 F.2d 485, 488 (9th Cir. 1984).
25 Thus, to the extent that similarities between a plaintiff's and a defendant's works are confined
26 to ideas and general concepts, such similarities are non-infringing.  Id.

   **b.     The Objective Extrinsic Test**

28    In determining whether two works are substantially similar, the Ninth Circuit

employs a two-part analysis: an objective extrinsic test and a subjective intrinsic test. The "intrinsic test" is a subjective comparison that focuses on whether the reasonable audience would find the works substantially similar in the "the total concept and feel of the works." Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002). If a plaintiff satisfies the extrinsic test, the ultimate factfinder must apply the intrinsic test. Three Boys Music Corp., 212 F.3d at 485. Therefore, "[f]or the purposes of summary judgment, only the extrinsic test is important." Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1174 (9th Cir. 2003); Smith, 84 F.3d at 1218. If a plaintiff cannot present evidence that would permit a trier of fact to find that he has satisfied the extrinsic test, he necessarily loses on summary judgment because a "jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." Rice, 330 F.3d at 1174 (quoting Kouf, 16 F.3d at 1045).

The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria. See Smith, 84 F.3d at 1218. In applying the extrinsic test, the Court must distinguish between protectable and unprotectable elements of the copyrighted work at issue because a party claiming infringement may place "no reliance upon any similarity in expression resulting from unprotectable elements." Apple Computer, Inc., 35 F.3d at 1446 (citation and internal quotation marks omitted); Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987) (similarities between competing stuffed dinosaur toys on account of posture and body design, and being cuddly, stem from the physiognomy of dinosaurs or from the nature of stuffed animals and are thus unprotectable). Therefore, in comparing the works, the Court must filter out any "unprotectable elements." Apple Computer, Inc., 35 F.3d at 1443. "Among the 'unprotectable elements' which the court must 'filter' out of its comparison of a copyrighted work and an allegedly infringing work are: 'ideas,' as distinguished from the 'expression' of those ideas; . . . or other information over which no individual is entitled to claim a monopoly. . . . " Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1176-77 (C.D. Cal. 2001) (internal citations omitted), affirmed, 90 Fed.Appx. 496 (9th Cir. 2004). In addition to

1  analytical dissection of similarities,[5] a court may consult expert testimony in applying the
2  extrinsic test. Three Boys Music Corp., 212 F.3d at 485.

### c.     **Application of the Objective Extrinsic Test**

Applying the extrinsic test to the present case, Plaintiffs must first identify the sources of the alleged similarity between the Mother Mountain Lion Photo and Defendants' Precious Cargo sculpture. Using "analytic dissection, and, if necessary, expert testimony," the Court will then determine whether any of the identified similar features are protected by copyright. The typical objective features to be compared when dissecting photographs include "selection of subject, posture, background, lighting, and perhaps even perspective alone." Los Angeles News Serv. v. Tullo, 973 F.2d 791, 794 (9th Cir. 1992) (quoting United States v. Hamilton, 583 F.2d 448, 452 (9th Cir. 1978)); see also ETS-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1075-76 (9th Cir. 2000); Rogers v. Koons, 960 F.2d 301, 307 (2d Cir. 1992) ("Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved.") (citations omitted).

Through the testimony and report of their expert witness, sculptor and mold-maker Jeffrey Tritel, Plaintiffs have presented evidence of alleged "similarity" between the Mother Mountain Lion Photo and the Precious Cargo sculpture. Mr. Tritel states that "there is virtually no difference" between Precious Cargo and the Mother Mountain Lion Photo because "both express a particular idea." Dkt. 63, Exh. 4 at 51:19-22, 75:9-15 ("the basic communication, the idea would be the same"), 77:9-10 ("there's no original idea here"). Elaborating on his opinion, Mr. Tritel explained,

> For me art has always been about expressing an idea. And in, <u>in the photograph the idea expressed is the fierce protective nature of the mother cat with her kitten.</u> That in the sculpture even right down to the title, which is Precious Cargo, emphasizes that same intent, which is the protective nature of the mother mountain lion with her kitten. And whether the paws, whether one has claws and the other one doesn't and whether a paw is spaced three inches wider in one than the other, does not affect that intent or the content – the communicative content

---

[5] "'Analytic dissection' focuses on isolated elements of each work to the exclusion of the other elements, combination of elements, and expressions therein." Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1398 n.3 (9th Cir. 1997).

>of the sculpture I think [sic] is identical to the communicative content of the photograph.

Id. at 51:23-52:10, emphasis added. Mr. Tritel further states that the "intent" of Plaintiff Dyer, "that of showing a mother mountain lion with her kitten," has not been substantially altered by the Precious Cargo sculpture, and "therefore makes the sculpture a copy rather than an original work of art." Id. at 52:19-53:1, 76:6-10, 77:1-5. Finally, Mr. Tritel characterizes Precious Cargo as a "direct rip off" of the Mother Mountain Lion Photograph because "the focal point on the photograph is the, is the mother and her baby and obviously that is the focal point of the sculpture, that is the essence of what this sculpture is about." Id. at 74:23-75:3. In addition to Mr. Tritel, Leslie Bell, a sculptor and mold-maker, similarly opined that Defendant Napier's Precious Cargo sculpture "copied the image from Mr. Dyer's photograph of the mother mountain lion with her cub in its mouth." ( Dkt. 63, Exh. 3 at ¶2-8.) Thus, Plaintiffs' evidence of similarity breaks down into three categories: (i) the idea of a mother mountain lion holding her kitten; (ii) the intent to portray the protective nature of a mother mountain lion with her kitten; and (iii) the focal point of both works is the mother mountain lion holding a kitten in her mouth. For three reasons, Plaintiffs' evidence of similarity fails to satisfy the extrinsic test.

First, the "idea" of the protective nature of a mother mountain lion with her kitten is not protected by copyright law. As previously stated, ideas themselves are not protected by copyright law and, therefore, cannot be infringed. See Mazer, 347 U.S. at 217-18 (copyright protects only an artist's expression of an idea, not the idea itself); 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."); Dr. Seuss Enters., 109 F.3d at 1398 ("'Substantial similarity' refers to similarity of expression, not merely similarity of ideas or concepts."); supra at 8-9.

Second, Mr. Tritel's opinion that Defendant Napier copied Plaintiff Dyer's "intent" to show the protective nature of a mother mountain lion with her kitten is not a protectable copyright element because when a similarity in expression arises from the use of a common

1   idea, no substantial similarity can be found. Aliotti, 831 F.2d at 901.  Here, Plaintiffs' Mother
2   Mountain Lion Photo and Defendants' Precious Cargo sculpture each encompass the idea of
3   a mother mountain lion with a kitten in her mouth near the edge of a drop-off.  As a result, both
4   works of art communicate the "intent," or concept, of the protective nature of a mother
5   mountain lion.  Because the concept of "protective nature" necessarily flows from the idea of
6   a mother mountain lion picking up a kitten near the edge of a drop-off, the concept is
7   inseparable from the idea presented here.  See Dkt. 57, pp. 4-11 and Ex. 7.  As such, the concept
8   of protective nature displayed by Plaintiff's Mother Mountain Lion Photo is not protected by
9   copyright law.  See Cavalier, 297 F.3d at 827 (the concept of a night light built into a book is
10  not protectable under copyright law); Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204, 209 (9th
11  Cir. 1988) (fifteen features in two computer games of karate result from constraints inherent in
12  the sport of karate, and thus are nonprotectable features that necessarily follow from the idea
13  of a martial arts karate combat game); Frybarger, 812 F.2d at 529 (to the extent that similarities
14  between works were confined to ideas and general concepts, they were noninfringing).

15          Third, Mr. Tritel's and Ms. Bell's opinions that "the focal point on the photograph" –
16  the mother mountain lion holding a kitten in her mouth – is the same as the focal point of the
17  sculpture is not a protectable similarity because the image of a mother mountain lion holding
18  a kitten in her mouth is expressed by nature such that it is "the common heritage of
19  humankind," which no artist may use copyright law to prevent others from depicting."  See
20  Satava v. Lowry, 323 F.3d 805, 813 (9th Cir. 2003).  In Satava, the Ninth Circuit wrestled with
21  locating "the faint line between unprotected idea and original expression in the context of
22  realistic animal sculpture."  Id. at 807.  Satava was a glass artist who specialized in creating
23  "glass-in-glass jellyfish sculptures" and registered several of his glass sculptures with the
24  Copyright Office.  The defendant in that case, Lowry, saw Satava's work and began creating
25  his own "glass-in-glass jellyfish sculptures."  After seeing some of Lowry's work, Satava sued
26  for copyright infringement.

27          The Ninth Circuit concluded that Satava could not use copyright law to "prevent others
28  from copying aspects of his sculptures resulting from . . . jellyfish physiology," because such

elements "are part of the public domain" and "are the common property of all." Id. at 810-11. The Satava Court further explained,

> Satava may not prevent others from depicting jellyfish with tendril-like tentacles or rounded bells, because many jellyfish possess those body parts. He may not prevent others from depicting jellyfish in bright colors, because many jellyfish are brightly colored. He may not prevent others from depicting jellyfish swimming vertically, because jellyfish swim vertically in nature and often are depicted swimming vertically. [FN] Satava may not prevent others from depicting jellyfish within a clear outer layer of glass, because clear glass is the most appropriate setting for an aquatic animal.

Id. at 811 (footnote and citation omitted). The Ninth Circuit found that Satava had made some original, and therefore copyrightable, contributions to his sculptures, such as the curls of certain tendrils; the arrangement of certain colors; and the unique shape of the jellyfishes' bells. Id. at 812. To the extent that these and other artistic choices were "not governed by jellyfish physiology," the Court held that Satava enjoyed a "thin" copyright, "comprising no more than his original contribution to ideas already in the pubic domain." Id.[6] As a result, Satava could "prevent others from copying the original features he contributed, but he [could] not prevent others from copying elements of expression that nature displays for all observers." Id.

In Satava, the Ninth Circuit made clear that it was not holding "that realistic depictions of live animals cannot be protected by copyright." Id. For the following reasons, however, the Court held that "that the scope of copyright protection in [realistic depictions of live animal] works is narrow":

> Nature gives us ideas of animals in their natural surroundings: an eagle with talons extended to snatch a mouse; a grizzly bear clutching a salmon between its teeth; a butterfly emerging from its cocoon; a wolf howling at the full moon; a jellyfish swimming through tropical waters. <u>These ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them</u>.

Id. at 813, emphasis added. The Court recognized that an artist "may, however, protect the original expression he or she contributes to these ideas," by varying certain elements such as "the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of the animal" and "the background, lighting, or perspective." Id. "Such variations, if original, may earn

---

[6] A "thin" copyright "protects against only virtually identical copying." Id.

- 13 -

1  copyright protection." Id.  The Ninth Circuit's overriding concern in Satava was to prevent
2  copyright protection from "cheat[ing] the public domain" by expanding to the point of
3  providing a monopoly on the "use of ideas that properly belong to us all." Id.

4  Applying Satava here, it is clear that the image of a mother mountain lion perched on a
5  rock with a kitten in her mouth is an idea "first expressed by nature" that is "the common
6  heritage of humankind, and no artist may use copyright law to prevent others from depicting
7  [it]" (id.). See Dkt. 57, Exh. 7. As a result, Plaintiffs cannot prevent Defendants from any
8  copying aspect of the mother mountain lion or kitten that naturally result from the physiology
9  of mountain lions. See id. at 811 (plaintiff may not prevent others from depicting the body parts
10 of jellyfish); Aliotti, 831 F.2d at 901 ("Appellants therefore may place no reliance upon any
11 similarity in expression resulting from . . . the physiognomy of dinosaurs . . . ."). Moreover,
12 Plaintiffs may not prevent Defendants from depicting a mother mountain lion perched on a
13 boulder with a kitten in her mouth, because, as Plaintiffs concede (dkt. 57 at pp. 4-11), mother
14 mountain lions in nature instinctively carry their kittens with their mouths.[7] See Satava, 323
15 F.3d at 811 (plaintiff may not prevent others from depicting jellyfish swimming vertically
16 because jellyfish swim vertically in nature); Aliotti, 831 F.2d at 901 n.1 (noting that a
17 Tyrannosaurus stuffed animal's open mouth was not an element protected by copyright because
18 Tyrannosaurus "was a carnivore and is commonly pictured with its mouth open").[8]

19 The Court rejects Plaintiffs' argument that work associated with getting the mountain
20 lions into the "ideal pose" is a protectable element (dkt. 62 at 7, 15), because they have not
21 demonstrated that the poses struck by both the mother mountain lion and the kitten are original
22 and were created by Plaintiff Dyer, rather than naturally occurring poses created and displayed
23 by nature. To the contrary, both Plaintiff Dyer and Troy Hyde admit that it is natural and

---

[7] None of the parties dispute that mountain lions in nature commonly perch, or crouch, on rocks.

[8] By their assertion that Satava only applies "where there is little variation between the lifelike representation of a natural creature and the protected work" (dkt. 62 at 13), Plaintiffs concede that Satava applies here because there is no variation between an actual, alive mother mountain lion holding her kitten and the Mother Mountain Lion Photo. See dkt. 57 at pp. 19-20.

- 14 -

1  instinctive for a mother mountain lion to pick up and carry kittens in her mouth. See Dkt. 57,
2  pp. 4-11.  Moreover, it cannot reasonably be disputed that the poses at issue here – the mother
3  mountain lion holding a kitten in her mouth – were necessary to the expression of the
4  underlying idea of the protective nature of a mother mountain lion. Thus, the similarities
5  relating to the mountain lions' poses are encompassed within the unprotectable subject matter
6  of the Mother Mountain Lion Photo. See Satava, 323 F.3d at 811-12.

7  While Satava's holding dictates that the subject matter of Plaintiffs' Mother Mountain
8  Lion Photo – a mother mountain lion perched on a boulder with a kitten in her mouth – is not
9  copyrightable, Plaintiffs' original contributions to the Mother Mountain Lion Photo enjoy a
10 "thin" copyright that comprises "no more than his original contribution to ideas already in the
11 pubic domain." Id. at 812. Given the evidence presented in this case, it is clear that the
12 protectable elements of Plaintiffs' Mother Mountain Lion Photograph are the following: the
13 choice of location (i.e., the mountains of Montana), background (i.e., snow-covered mountains,
14 forest of trees, and blue sky), perspective, lighting/shading, timing, angle, framing, film, and
15 camera. See Dkt. 1, Ex. B; Dkt. 62 at 10. In this case, however, all of the similarities in
16 expression between the two works at issue consist of unprotectable elements or themes that flow
17 predictably from the underlying subject matter. See supra at 14-15; compare Dkt. 1, Ex. B with
18 Dkt. 1, Exs. C-I. Plaintiffs have not presented any evidence (and do not contend) that
19 Defendants' Precious Cargo sculpture is similar with respect to the choice of location,
20 background, perspective, lighting/shading, timing, angle, framing, film, or camera. Nor have
21 Plaintiffs shown that the attitude, gesture, muscle structure, facial expression, coat, and texture
22 of the mother mountain lion and her kitten are original features contributed by Plaintiff Dyer,
23 rather than expressions and features displayed by mountain lions in nature for all observers.
24 See Satava, 323 F.3d at 813 (an eagle with talons extended to catch a mouse is an idea nature
25 provides of animals in their natural surroundings). Because Plaintiffs have failed to produce
26 evidence that would permit a reasonable jury to find that Plaintiffs have satisfied the extrinsic
27 evidence test, the Court will grant summary judgment for Defendants on the issue of liability.
28 See Rice, 330 F.3d at 1174.

The Court's conclusion regarding the lack of substantial similarity between *protectable elements* of the Mother Mountain Lion Photo and the Precious Cargo sculpture is supported by the expert opinion of Ms. Kinne. Ms. Kinne recognized that both the Mother Mountain Lion Photo and the Precious Cargo sculpture reflect the protective nature of a mother mountain lion with a kitten in her mouth, which is not protectable because mountain lions in this same pose "exist in nature and they are common to all of us." (Dkt. 57 at p.19.) Moreover, according to Ms. Kinne, the Precious Cargo sculpture is an artist's interpretation of mountain lions existing in nature because the rock "is a highly polished, idealized rock," and "some of what might appear in a natural living mountain lion" has also been altered. (Id. at pp.19-20.) The Mother Mountain Lion Photo, by contrast, is a realistic depiction of both mountain lions in a "total scene," including trees, the sky, and a snow-covered mountain. (Id. at pp.19-20.) Thus, in Ms. Kinne's opinion, the copyrightable elements of the Mother Mountain Lion Photo are "the lighting, the scene, the entire scene, the angle, and because of making those choices, his choice of film and lens," none of which were copied by Defendant Napier in creating the Precious Cargo sculpture. (Id. at pp. 22.)

For two reasons, the Court rejects Plaintiffs' reliance on Rogers v. Koons, 960 F.2d 301 (2d Cir. 1992), a case in which the Second Circuit Court of Appeals affirmed a district court's holding that a sculpture infringed a copyrighted photograph depicting a smiling husband and wife holding a litter of puppies. First, Rogers presented "the rare scenario" where there was direct evidence of copying by the defendant, who admittedly gave a copy of the photograph to artisans with explicit instructions that the work be copied in every respect, including the composition, shading, poses, and expressions. Id. at 307. Moreover, "the importance of copying the very details of the photograph that embodied plaintiff's original contribution" was stressed by the defendant throughout the creation of the sculpture, including his instruction that the creation be designed "as per photo." Id. The Court of Appeals determined that the undisputed direct evidence of copying sufficiently supported the district court's grant of summary judgment in favor of the plaintiff. Id. In the present case, by contrast, it is undisputed that Plaintiffs have produced no direct evidence of copying by Defendant Napier.

- 16 -

Second, the Rogers Court recognized that, even if direct evidence of copying was not available, the district court's decision could be upheld on the basis that defendant's "access to the copyrighted work is conceded, and the accused work is so substantially similar to the copyrighted work that reasonable jurors could not differ on the issue." Id. at 307.  In its alternative holding, however, the Second Circuit recognized the principle espoused by the Ninth Circuit in Satava:  that the idea of a couple with eight small puppies seated on a bench was not protected,[9] "but rather [plaintiff's] expression of the idea – as caught in the placement, in the particular light, and in the expressions of the subjects – . . . g[a]ve[] the photograph its charming and unique character, that is to say, ma[d]e[] it original and copyrightable." Id. at 308.  The Court emphasized, however, that if defendant had "simply used the idea presented by the photo, there would *not* have been infringing copying." Id. at 308, emphasis added.  The present case is distinguishable from Rogers because Plaintiffs have presented no evidence that the expression of the Mother Mountain Lion Photo – in terms of the *original and protectable elements* incorporated by Plaintiff Dyer – were copied by Defendant Napier in the Precious Cargo sculpture.

## CONCLUSION

Viewing the evidence in the light most favorable to Plaintiffs, no reasonable jury applying the objective extrinsic evidence test could find substantial similarity of ideas and expression in the Mother Mountain Lion Photo and the Precious Cargo sculpture because, after the nonprotectable elements of the Mother Mountain Lion Photo are filtered out, there is not substantial similarity.  Although both works of art have the same subject matter – a mother mountain lion perched on a rock with a kitten in her mouth – it is well-settled that when a live creature commonly appearing in nature is reproduced, the only elements protected by copyright are those original aspects which are not required in the depiction of the creature as expressed in nature.  Here, Plaintiffs have failed to produce evidence of

---

[9] For this reason, the Court specifically rejects Plaintiffs' assertion that "[t]he Rogers Court went to great lengths to address precisely why the idea of a couple sitting with eight small puppies on a bench has copyright protection even though it is a fairly common scene."  Dkt. 62 at 12.

- 17 -

1  substantial similarity with respect to the protectable aspects of the Mother Mountain Lion
2  Photo that are not required by the idea of a mother mountain lion with a kitten in her mouth.
3  Accordingly,
4  **IT IS HEREBY ORDERED GRANTING** Defendants' Motion for Summary
5  Judgment on the issue of liability, and **DENYING AS MOOT** Defendants' Motion for
6  Summary Judgment on the issue of damages.  (Dkt. 56.)
7  **IT IS FURTHER ORDERED DENYING AS MOOT** Plaintiffs' Motion to Strike
8  Exhibits 1 Through 3 of Defendants' Separate Statement of Facts Accompanying
9  Defendants' Reply Memorandum and Motion to Strike Exhibit 13 From Defendants'
10 Statement of Facts in Support of Motion for Summary Judgment.  (Dkt. 72.)
11 **IT IS FURTHER ORDERED DENYING** Plaintiffs' Motion to Strike Testimony of
12 Jane Kinne from Defendants' Motion for Summary Judgment and Motion to Disqualify Jane
13 Kinne as Defendants' Expert Witness.  (Dkt. 73.)
14 **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment
15 accordingly.
16 DATED this 25th day of September, 2006.

_____
Stephen M. McNamee
United States District Judge